[No. 7,711.—In Bank.]

## W. W. CAMRON *v.* JOHN WEIL ET AL.

GENERAL FUND—SPECIAL APPROPRIATION—DRAINAGE ACT—TREASURER OF STATE—CONSTRUCTION OF STATUTE.—Money received by the State Treasurer, although collected and specially appropriated under an invalid act, should not be paid into the General Fund. Accordingly, application refused for mandamus to compel the State Treasurer to pay into the General Fund money collected under the drainage act.

PETITION for the writ of mandamus.

The defendant was the Treasurer of the State of California.

*James A. Waymire*, for Plaintiff.

"The General Fund consists of moneys received into the treasury, *and not specially appropriated to any other fund.*" (Pol. Code, § 454.)

It appears from the petition that $85,696.98 have been received into the treasury as tax money, and credited to two funds which have no existence, because the act creating them is void. It results that the money is loose in the treasury; it is not "specially appropriated to any other fund." The Treasurer must therefore credit it to the General Fund, or he cannot obey the law which enjoins upon him the duty of keeping "separate accounts of the different funds." If not credited to the General Fund, the money will remain idle, for it will not be in any fund upon which the Controller can draw his warrants.

The plaintiff does not ask to have the money transferred from one fund to another. He admits that where money is lawfully appropriated to one fund, it cannot be transferred without an act of the Legislature. That is not this case. The "State Drainage Construction Fund," and the "Construction Fund of Drainage District No. 1," are not funds if the law is void. Those funds are gone, and the books in which the Treasurer has kept them must be closed. He must *credit* the money to the General Fund—the only fund to which the law permits him to credit it. There are only three funds into which money received from taxes is paid: the "Interest and Sinking Fund," the "School Fund," and the "General Fund." This will be seen from § 3713 of the Political Code, and by examining any

official report of the State Treasurer. The report for the year ending June 30th, 1879, will be found as an appendix to the statutes of 1880.

The money received from county treasurers is the *tax* money. Other sources of revenue are fees, licenses, harbor dues, etc. The tax money, as will be seen, is divided among three principal funds. None of it goes into the other funds. Miscellaneous receipts, not specially appropriated to some other fund, go into the General Fund also.

*W. H. Sears*, also for Plaintiff.

*A. L. Hart*, Attorney-General, for Defendants.

If a special fund be appropriated and set apart for an illegal purpose, while the Treasurer may refuse to pay it out for such purpose, still he cannot pay it out for any other purpose; yet this would be the result (conceding the statute to be void), by transferring the fund in question to the General Fund.

The COURT:

The petition alleges that there is in the State treasury a sum of money " collected, received, and paid into the State treasury to the credit of certain funds designated in said act (the Act of April 23d, 1880, entitled 'An Act to promote drainage'); as, the ' State Drainage Construction Fund,' and ' Construction Fund of Drainage District No. 1.' " Because—as claimed by petitioner—the Act of the Legislature is invalid, we are asked, by writ of mandate, to compel the State Treasurer forthwith to credit the sum aforesaid to the General Fund.

Section 454 of the Political Code provides: " The General Fund consists of moneys received into the treasury, and not specially appropriated." The money which the petitioner asks to have transferred to the General Fund was received by the Treasurer in his official capacity, and he is responsible for its safe keeping. He may refuse to pay any portion of it out upon a demand based upon a statute, good in form, but invalid because unconstitutional. But it by no means follows that because the Treasurer is not authorized to pay out moneys collected under an invalid statute, for the purposes mentioned in

it, he can be required to pay it out for other purposes. Yet such is the real object of the present application.

If the "act to promote drainage" constituted part of the legislation of this State prior to the adoption of the Political Code, or had been enacted at the same time, it would seem very clear that § 454 of the Code did not require that the moneys collected under the drainage act should be placed to the credit of the General Fund. In the case supposed, § 454 would be read as if it had declared—"The General Fund consists of moneys received into the treasury, and not specially appropriated by the act ' to promote drainage,'" etc. In arriving at the *intention* of the Legislature sought to be expressed in the section, the circumstance that the drainage act was unconstitutional would not, in such case, be material. The purpose of the Legislature to *exclude* from the General Fund the moneys collected under the drainage act would be equally apparent, whether the latter act was or was not a constitutional or valid statute. The drainage act, so called, was not passed until *after* the Political Code, but § 454 evidently contemplates the exclusion from the General Fund of moneys specially appropriated by subsequent acts of°the Legislature. The Legislature, by formal act, did specially appropriate the moneys collected under the "act to promote drainage." The drainage act may be invalid, but this does not change the intention expressed in § 454 of the Political Code, which is to include in the General Fund only the moneys which may not be specially appropriated by the *declaration* of the Legislature. If the drainage act is *void*, the moneys collected under it must remain in the treasury until appropriated by an act of the Legislature requiring that they be returned to the tax payers, or otherwise appropriating them. It may be admitted that the Legislature has the *power* to appropriate to the payment of the general expenditures of the Government moneys collected and attempted to be appropriated under a statute absolutely *void*, and yet every principle of sound construction requires of us to hold that such was not the intention of the legislative body, unless the language employed clearly demands that such intention be imputed. In our opinion, the language of § 454 does not make necessary a construction such as must presuppose a certain

element of injustice, even if the moneys can, in strict law, be assumed to have been paid by the tax payers *voluntarily*. The section ought not to be held to create a residuary fund, into which shall lapse all moneys which the Legislature may have attempted ineffectually to appropriate to some special purpose. It simply refers to the General Fund such moneys received into the State treasury as have not, by formal legislative enactment (valid or invalid), been declared to be appropriated specially.

Writ denied, and proceeding dismissed.